IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NANCY ARSAN,

 Plaintiffs,

v.

BETH KELLER, *et al.*,

 Defendants.

Case No. 3:17-cv-121

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING MOTION TO DISMISS OF DEFENDANT DAVID FIERST, GUARDIAN *AD LITEM* (DOC #42); PLAINTIFF NANCY ARSAN'S CLAIMS FOUR AND FIVE AGAINST FIERST ARE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (FED. R. CIV. P. 12(b)(6)); JUDGMENT SHALL ULTIMATELY ENTER IN FAVOR OF FIERST AND AGAINST ARSAN ON CLAIMS FOUR AND FIVE

---

Plaintiff Nancy Arsan ("Plaintiff" or "Arsan") alleges that Defendant David Fierst ("Fierst"), individually and in his official capacity as *guardian ad litem* for her son, Kaden Otto ("Kaden"), violated her right to equal protection under the Fourteenth Amendment to the United States Constitution (claim brought under 42 U.S.C. § 1983), and furthered a conspiracy to deprive Arsan of her constitutional rights, in violation of 42 U.S.C. § 1985. Doc. #1, ¶ 148, 150, 155, 157, PAGEID #19, 20. She claims that Fierst did so: by refusing to visit her residence while serving as guardian *ad litem* for Kaden, instead relying on the reports of employees of Greene County, Ohio, Children's Services Board ("Children's Services Board"); and by giving sworn testimony during custody hearings that was biased against her based on her race, ethnicity and religion. *Id.*, ¶¶ 121, 123-

25, 148, PAGEID #15, 19. Fierst filed a Motion to Dismiss, Doc. #42, which, for the reasons set forth below, is SUSTAINED.

I.  **RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

On April 29, 2015, Defendant Kristi Weber ("Weber"), a Children's Services Board caseworker, came to Plaintiff's house. Doc #1, ¶¶ 3, 17, 20, PAGEID #3, 5. Weber stated that there was a report that the Plaintiff was abusing drugs in her home and neglecting her children. *Id.*, ¶ 27, PAGEID #6. Weber swabbed Plaintiff's mouth and, at a May 22, 2015, hearing, testified that the drug screen results from the swab indicated a high level of methamphetamines and amphetamines. *Id.*, ¶¶ 49, 59, 60, PAGEID #8, 9.

On May 29, 2015, Defendant Amy Weinman, Program Resource Manager of the Children's Services Board, concluded that there was physical abuse and neglect of Arsan's son, Kaden Otto ("Kaden"), and temporary custody was given to Kris Otto ("Kris"), Kaden's father, under the supervision of the Children's Services Board. Doc #1, ¶¶ 109, 111, PAGEID #13, 14. Kris filed a custody action, and Fierst was appointed guardian *ad litem* for Kaden by the Greene County, Ohio Common Pleas Court, Juvenile Division ("Greene County Court"). *Id.*, ¶121, PAGEID #15. Although Fierst was asked to visit Arsan's home, he did not, stating that he had enough evidence and did not have time to do so. *Id.*, ¶ 122. At subsequent custody hearings in October and November 2016, Fierst relied on the Children's Services Board's reports and Kris's

---

[1] As Fierst's Motion to Dismiss is brought under Rule 12(b)(6), the Court, for the purposes of the motion, must treat Plaintiff's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

2

unverified statements, and testified that "since the Plaintiff was 'Middle Eastern' she was probably a[] Muslim." *Id.*, ¶¶ 123-24. When asked "what difference that would make, Fierst said to turn on the TV to see what these people do." *Id.*, ¶ 125. On March 29, 2017, Fierst participated in a conference call among Arsan's attorney, the Greene County Court Judge, and the attorney for the other parties to the custody action. During the call, Arsan's attorney made a request for the audio recordings of the custody hearings, which the Greene County Court denied. *Id.*, ¶¶ 127, 133, PAGEID #15, 16.

On April 11, 2017, Arsan filed the instant Complaint, bringing two claims against Fierst in his individual and official capacities. Doc. #1. In Claim Four, Arsan alleges that Fierst violated her Fourteenth Amendment right to equal protection when he "gave testimony under oath based upon ethnic, racial and religious bias in his position as *guardian ad litem* in Plaintiff's custody case[.]" *Id.*, PAGEID #19. She claims that his testimony "had an adverse effect upon this [custody] case and the Plaintiff's health, emotional well-being, and reputation." *Id.* In Claim Five, Arsan alleges that Fierst "relied upon the plan and the fruits of the actions to further the conspiracy of [co-Defendants] [Jennifer] McDermott and Weber and [Beth] Keller [*sic*] to ensure that custody of Kaden Otto be given to Kris Otto[.]" *Id.*, ¶155, PAGEID #19. On June 14, 2017, Fierst filed his Motion to Dismiss. Doc. #42.

## II.  RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." The complaint must provide the defendant with 'fair notice of what the… claim is and the

grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the plaintiff has failed to [adequately] state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550, U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusion" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). Legal conclusions "must be supported by [well-pleaded]

4

factual allegations. . . [that] plausibly give rise to an entitlement of relief." *Id.* At 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986).

III. **ANALYSIS**

Arsan's only specific allegations against Fierst in the Complaint are: (1) Fierst's refusal visit Arsan at her home, stating that he did not have time to do so, and that he had gathered enough evidence to represent Kaden's interests without such a visit; (2) his allegedly biased testimony at hearings in October and November 2016 regarding Arsan's national origin and religion; (3) his improper reliance upon the reports of Children's Services Board employees as the basis for his testimony; and (4) his presence on a conference call with Arsan and the other defendants, which ultimately resulted in the Greene County Court Judge denying the request of Arsan's counsel for audio recordings of the October and November 2016 hearings. Doc. #1, ¶¶ 122-125, 127, PAGEID #15. Fierst notes that these alleged acts or failures to act were all undertaken in his capacity as a court-appointed guardian *ad litem*; consequently, he argues, he is entitled to "quasi-judicial immunity," a form of absolute immunity. Doc. #42, PAGEID #202 (citing *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984); *Williams v. Barrick*, 10th Dist. Franklin No. 08AP-133, 2008-Ohio-4592, ¶ 12 (Sept. 11, 2008)). Fierst is entitled to such immunity, he claims, because a guardian *ad litem* is an integral part of

5

the judicial process, and "[a] failure to grant immunity would hamper the duties of a *guardian ad litem* in his role as advocate for the child in judicial proceedings." *Id.*, PAGEID #202-03 (quoting *Kurzawa*, 732 F.2d at 1456); *see also Williams*, 2008-Ohio-4592, at ¶ 12 (citation omitted) ("Under Ohio law, a guardian *ad litem* enjoys absolute immunity from actions arising out of his or her services in that role.").

In her memorandum in opposition, Arsan does not dispute that Fierst is entitled to quasi-judicial immunity as to his allegedly racially-biased testimony at the custody hearings. Doc. #44, PAGEID #226. However, she argues that quasi-judicial immunity does not extend to Fierst's actions—specifically, his: failure to visit Arsan's residence; reliance upon reports from Children's Service Board employees as the basis for his testimony; and participation in the March 29, 2017, conference call, after which the Greene County Court refused to turn over audio recordings of the custody hearings to her. *Id.*, PAGEID #226-27. Yet, Arsan cites no caselaw supporting the proposition for limiting Fierst's immunity to only the testimony given, and indeed, Sixth Circuit precedent compels the opposite conclusion. In affirming the dismissal of federal claims against a guardian *ad litem* based on quasi-judicial immunity, the *Kurzawa* Court held that the guardian "must act in the best interests of the child he represents. Such a position clearly places him squarely within the judicial process to accomplish that goal. A guardian *ad litem* must also be able to function without the worry of possible later harassment and intimidation from dissatisfied parents." 732 F.2d at 1458 (emphasis added). *Kurzawa* unambiguously affirmed that quasi-judicial immunity extends to all actions, in and outside of the court, taken by a guardian *ad litem*. Accordingly, Arsan's claims against Fierst fail as matters of law.

6

Even assuming *arguendo*, however, that quasi-judicial immunity does not extend to Fierst's out-of-court actions, Arsan has <u>still</u> failed to state a claim for relief against Fierst. As to the Fifth Claim, Arsan's only allegation is that Fierst "relied upon the plan and the fruits of the actions to further the conspiracy of McDermott and Weber and Keller [*sic*] to ensure that custody of Kaden Otto be given to Kris[.]" Doc. #1, ¶ 155, PAGEID #20. Arsan does not allege in the Complaint that Fierst was aware of any conspiracy among McDermott, Weber and Keller; indeed, she does not claim that Fierst ever interacted with them. Moreover, the facts alleged do not allow the Court to draw such an inference. McDermott, Weber and Keller are former or current employees of the Children's Services Board, a party to the custody hearings, whereas Fierst is a private practitioner appointed by the Greene County Court to represent Kaden's interests independently of those of Arsan and the Children's Services Board. *Id.*, ¶¶ 3, 5, 7-8, PAGEID #3, 4. In light of the above, Arsan's claim that Fierst participated in any conspiracy to deprive her of her civil rights, as Claim Five alleges, is implausible and must be dismissed, for failure to state a claim upon which relief can be granted.

Claim Four—violation of Arsan's Fourteenth Amendment right to equal protection—is not actionable against Fierst. As Fierst correctly notes, guardians *ad litem* are not "state actors" subject to claims brought under 42 U.S.C. § 1983, because they do not act under color of state law in discharging their duties. Doc. #42, PAGEID #204-05 (citing *Reguli*, 371 F. App'x at 601; *Kirtley v. Rainey*, 326 F.3d 1088, 1095 (9th Cir. 2003); *Holley v. Deal*, 948 F. Supp. 711, 715 (M.D. Tenn. 1996)). Unlike, *e.g.*, Keller, whose duty was owed to the Children's Services Board, a state entity, Fierst's ultimate duty was owed to Kaden, a private citizen. *See Catudal v. Browne*, No. 2:12-

cv-197, 2012 WL 1068530, at *4 (S.D. Ohio Mar. 29, 2012) (Preston Deavers, Mag. J.), *Report and Recommendations adopted on other grounds at* 2012 WL 1476088 (S.D. Ohio Apr. 24, 2012) (Frost, J.) (quoting *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986); *Hennelly v. Flor de Maria Oliva,* No. 06-2265, 237 F. App'x 318, 320 (10th Cir. 2010); citing *Long v. Pend Oreille Cnty. Sheriff's Dep't,* No. 09-35281, 385 F. App'x. 641, 642 (9th Cir. 2010)) (finding that guardian *ad litem* was not a "state actor[] for purpose of [42 U.S.C.] § 1983[,]" because "similar to a private attorney's duty to his or her client, a guardian *ad litem* 'owes his or her undivided loyalty to the minor, not the state.'").

Finally, Arsan devotes much of her memorandum in opposition to evaluating whether Fierst met any of the three tests for determining whether a private party acted under color of state law: "(1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." Doc. #44, PAGEID #218 (quoting *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (*en banc*)). Yet, Fierst, as Kaden's guardian *ad litem*, does not meet any of those tests. <u>First</u>, a private actor meets the public function test only "if he or she exercised powers traditionally reserved <u>exclusively</u> to the state." *Chapman*, 319 F.3d at 833 (emphasis added). Arsan concedes that "[t]he public function test has been interpreted narrowly[,]" Doc. #44, PAGEID #218 (quoting *Chapman*, 319 F.3d at 833), and while guardians *ad litem* are officers of the appointing court, their ultimate duty is to the child whom they represent.

8

Legal advocacy is not "a power which has traditionally been exclusively reserved to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).[2]

Second, "[t]he state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Holley*, 948 F. Supp. at 715 (citing *Wolotsky*, 960 F.2d at 1335). The purpose of the appointment requires a guardian *ad litem* to exercise judgment independently of the judicial officer or any party to the case. In her memorandum in opposition, Arsan argues that Fierst "relied upon the reports of the Defendant employees of Greene County Children's Services. As such, he exercised no independent judgment and did not conduct an independent investigation." Doc. #44, PAGEID #223. Yet, even if Fierst relied on those reports, the Complaint does not allege that Fierst was coerced into doing so by the Children's Services Board, the Greene County Court or any other governmental actor, such that his actions could be imputed to the state.

Third, to satisfy the "nexus" test, Plaintiff must plausibly allege that there is a "pervasive entwinement" between Fierst and the state. *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 291, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001). Fierst, as guardian *ad litem*, was under a duty to act in Kaden's best interests, irrespective of the interests of the Children's Services Board or the Greene County Court, and the Complaint sets forth no factual allegations that Fierst had any involvement with state actors, such that his actions and interests were "pervasively

---

[2] Arsan argues that guardians *ad litem* satisfy the public function test under the doctrine of *parens patriae*. Doc. #44, PAGEID #220-21. However, the limited scope of Fierst's appointment renders facially implausible any inference that Fierst was acting *in loco parentis* on Kaden's behalf, and the Complaint contains no additional allegations that would make such an allegation plausible.

9

entwined" with theirs.³ For the reasons set forth above, Fierst is not *sui juris* for Claim Four, and that claim must be dismissed as against him.

## IV.   DISMISSAL WITH PREJUDICE

Rule 15(a)(2) directs courts to give leave to amend "when justice so requires." Thus, a plaintiff whose claims are dismissed under Rule 12(b) is often granted leave to file an amended complaint. Nonetheless, a court need not grant leave to amend if doing so would be futile. "A proposed amendment is futile if the amendment could not withstand a . . . motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted). Fierst's entitlement to quasi-judicial immunity means that renewed Claims Four and Five, regardless of how they were amended, could not survive a Rule 12(b)(6) motion to dismiss. Also, his status as a non-state actor means that a renewed Claim Four, brought under 42 U.S.C. § 1983, could not survive a Rule 12(b)(6) motion to dismiss. As no amended pleading could cure the defects of Arsan's claims against Fierst, Claims Four and Five, as against him, must be dismissed with prejudice.⁴

---

³ The Complaint's allegation that "Fierst relied upon the plan and the fruits of the actions to further the conspiracy of McDermott and Weber and Keller[,]" Doc. #1, ¶ 155, PAGEID #20, is a bare legal conclusion which, even at the Motion to Dismiss stage, this Court need not accept as true.

⁴ Additionally, the *Rooker-Feldman* doctrine deprives federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 68 L.Ed. 362 (1923)).

Post-*Exxon Mobil*, courts have diverged in whether to apply *Rooker-Feldman* in cases where a plaintiff alleges constitutional violations arising out of a child custody dispute. *See Taylor v. Randolph*, No. 14-11660, 594 F. App'x 578, 579-80 (11th Cir. 2014) (*per curiam*); *Reguli v. Gulfee*, No. 09-5558, 371 F. App'x 590, 595-96 (6th Cir. 2010) (applying the doctrine to bar constitutional claims against courts and

## V. CONCLUSION

For the foregoing reasons, Defendant Fierst's Motion to Dismiss, Doc. #42, is SUSTAINED, and Claims Four and Five as against Fierst are DISMISSED WITH PREJUDICE. Judgment shall <u>ultimately</u> enter in favor of Fierst and against Arsan on those claims.

Date: December 12, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

judicial officers who issued or contributed to adverse child custody decisions); *but see Melton v. Dist. of Columbia*, 85 F. Supp. 3d 183, 189-90 (D.D.C. 2015); *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 541-42 (E.D.N.Y. 2013) (refusing to apply the doctrine because plaintiffs were not challenging the state court judgments themselves, but rather, the alleged constitutional violations that occurred during the proceedings leading up to the judgments).

Arsan argues that, through her Complaint, she does not "challenge[] the decision in her custody action. She challenges her discriminatory treatment and nothing else." Doc. #44, PAGEID #227 (citing *Reguli*, 371 F. App'x 590 at 596 n.6). However, it is the Greene County Court proceedings and judgment that caused her injuries, and the *Rooker-Feldman* doctrine estops Arsan from collaterally attacking that decision in this Court, even via federal constitutional claims. Fierst did not move to dismiss Arsan's claims for lack of subject matter jurisdiction under Rule 12(b)(1), and his entitlement to quasi-judicial immunity bars any claim by Arsan against him. Accordingly, the Court need not decide whether the *Rooker-Feldman* doctrine bars Arsan from bringing claims against Fierst. Nonetheless, the Court is skeptical that it would even have subject matter jurisdiction over any amended claims against Fierst.

11