IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NANCY ARSAN,
    Plaintiff,

v.

BETH KELLER,
    Defendant.

Case No. 3:17-cv-121

JUDGE WALTER H. RICE

---

DECISION AND ENTRY DENYING DEFENDANT KRISTI WEBER'S
MOTION FOR SUMMARY JUDGMENT (DOC. # 76)

---

This matter is before the Court on Defendant Kristi Weber's Motion for Summary Judgment, Doc. #76, the Response to Motion for Summary Judgment of Kristi Weber, Doc. #78, and Defendant Kristi Weber's Reply in Support of Motion for Summary Judgment, Doc. #81. For the reasons set forth below, the Motion for Summary Judgment is denied.

I. **Factual Background**

On April 29, 2015, Defendant, Kristi Weber, an Intake Caseworker for the Greene County Ohio Department of Job and Family Services, Children Services Division ("Children's Services"), went to the residence of Plaintiff, Nancy Arsan, following the receipt of a report that Plaintiff "was using drugs in her home while at least one of her children" was present and that Plaintiff's "children were not

safe." Doc. #77-1, *Sealed* PAGEID##491,494. According to Defendant Weber, this report "raised a serious concern for the safety and welfare" of Plaintiff's children. Doc. #77-1, *Sealed* PAGEID#491. Although Defendant claims that she had consent to enter Plaintiff's home, *Id.* at PAGEID#492, Plaintiff denies that consent was ever given to Defendant Weber. Doc. #78-1, PAGEID#585. The parties agree that Defendant did not have a warrant.

During the April 29, 2015, visit to Plaintiff's home, Defendant Weber gave Plaintiff a drug test and Plaintiff signed a Safety Plan prepared by Defendant Weber. The Safety Plan stated, in part, that "[T]here are allegations that Nancy is using crack and meth…" in the presence of one of her children, that Plaintiff is not to have any unsupervised contact with her child, and that Plaintiff's activities are to be monitored by announced and unannounced weekly visits. Doc. #77-1, *Sealed* PAGEID#549. Plaintiff has testified that she was coerced into signing the Plan and that she was told that if she did not sign it, Plaintiff's children would be removed. Doc. #80, PAGEID##613,617. Plaintiff has also signed an affidavit stating that she never used drugs and agreed to take the April 29 drug test since Defendant Weber stated she would not leave until Plaintiff took the test. Doc. #78-1, PAGEID#585.

On May 4, 2015, Plaintiff was observed alone and outside of her home taking a walk with one of her children. This was a violation of a second Safety Plan signed by Plaintiff three days earlier. Doc. #77-1, *Sealed* PAGEID#493. Upon being advised of this alleged violation, Defendant Weber went to Plaintiff's

2

home on May 4, this time with a Beavercreek police officer and another intake caseworker, and Weber again entered Plaintiff's home. *Id.* Like the April 29, 2015, visit, Defendant Weber had no warrant and claimed that Plaintiff gave her consent to enter her home. *Id.* at PAGEID#494. Plaintiff, however, disputes that any consent was given to Defendant Weber to enter her home on May 4, 2015. Doc. #78-1, PAGEID#585. Plaintiff also testified that when Defendant Weber told her at the time of the May 4 visit that Plaintiff had violated the Safety Plan, that she called Don Otto, an ex-husband's father. Plaintiff told Don Otto that the police and Children's Services were at Plaintiff's home and were saying that she broke the Safety Plan. Doc. #80, PAGEID##643-44. According to Plaintiff, following her call to Don Otto, Mr. Otto came to Plaintiff's home and removed the one child who was there. Doc. #80, PAGEID#645.

On May 22, 2015, a hearing was held in the Greene County Juvenile Court concerning the custody of Plaintiff's two children. Plaintiff claims that although she had a hearing and was represented by counsel, the hearing itself was unfair because of the illegal entry into Plaintiff's home and because Plaintiff was coerced into taking a drug test that ultimately showed use of amphetamines and methamphetamines. Plaintiff has alleged that the April 29, 2015, drug test was incorrectly administered and that the results of a second correctly administered "clean" drug test were withheld from her and never admitted at the May 22 hearing. Following the May 22 hearing, temporary custody of one child was

granted to the child's father and custody of the other child was given, under the supervision of Children Services, to the father of the other child.

Plaintiff has claimed $32,500 in damages which consist of remodeling expenses in an ex-husband's home, attorney's fees and lost wages. Doc. #80, PAGEID667-670. Plaintiff testified that following the loss of custody of her children, she was forced to move from a home owned by her ex-husband and, as a result, lost the remodeling expenses that she put into the ex-husband's home. *Id.* Attorney's fees were incurred to "pay lawyers to get my kids," *Id.* at PAGEID#670, and Plaintiff allegedly lost wages for the time period when she was put "in a mental institution against my will", although Plaintiff concedes that Defendant Weber was not responsible for this expense. *Id.* at PAGEID#671.

## II.     **Summary Judgment Standard**

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

4

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present

5

conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. <u>Legal Analysis</u>

Defendant Weber asserts that she is entitled to summary judgment based on the affirmative defense of qualified immunity.[1] Qualified immunity protects

---

[1] Defendant also raises, for the first time, the argument that the action should be dismissed pursuant to Fed. R. Civ. P. 4(m). A defendant who has waived service must move to dismiss for lack of personal jurisdiction within sixty days of the waiver. Fed.R.Civ.P. 12(a)(1)(A)(ii). Personal jurisdiction flowing from the Due Process Clause may be waived either explicitly or implicitly. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir.2006). Although the issue of service was raised in her Answer, Doc. #35, given that Defendant Weber previously filed a Motion for Judgment on the Pleadings, Doc. #47, and has engaged in further proceedings including discovery, personal jurisdiction has been waived and a reasonable expectation that Defendant will defend on the merits created. *Gerber v. Riordan*, 649 F.3d 514, 519 (6th 2011), cited in *State Auto Inc. Co. v. Thomas Landscaping & Const., Inc.* 494 Fed. App'x 550, 552-553 (6th Cir. 2012); *Boulger v Woods*, 306 F.Supp.3d 985 (S.D. Ohio 2018).

government officials who perform discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982).

> In determining whether qualified immunity is warranted, we employ a two-part test. 'The first inquiry must be whether a constitutional right would have been violated on the facts alleged; second assuming the violation is established, the question whether the right was clearly established must be considered....' *Sigley v. City of Parma Heights*, 437 F. 3d 527, 537 (6th Cir. 2006), citing, *Smith v. Cupp*, 430 F.3d 766, 773 (6th Cir.2005) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

Once the issue of qualified immunity is raised by a defendant, the plaintiff bears the burden of establishing that the defendant is not entitled to dismissal based on this affirmative defense. *Johnson v. Mosely*, 790 F.3d 6490,653 (6th Cir. 2015) (citing *Reilly v. Vadlamudi*, 680 F. 3d 617, 623 (6th Cir. 2012)).

Plaintiff has testified by affidavit and deposition that Defendant Weber violated her Fourth Amendment rights. Specifically, Plaintiff claims that Defendant Weber entered her home both on April 29, 2015, and on May 4, 2015, without her consent. Plaintiff's affidavit states that on April 29, 2015, she repeatedly told Defendant Weber to leave, that Defendant walked through the house and opened a closet door, insisted that Plaintiff admit to something, and ultimately coerced Plaintiff into agreeing to a drug test. Plaintiff's affidavit also states that on May 4, 2015, Defendant Weber again entered into Plaintiff's home without consent and told Plaintiff that she was taking one of Plaintiff's children. While it appears from a

reading of Plaintiff's affidavit, Doc. #78-1, PAGEID#585, and her deposition, Doc. #80, that Plaintiff called her child's grandfather to come to her home and take the child, Plaintiff's allegation remains that Defendant Weber did not have consent to enter. Defendant argues that the affidavit of Lamis Arsan, Plaintiff's mother, contradicts Plaintiff's earlier deposition testimony, since both Plaintiff and her mother have each testified that they opened the door on May 4, 2015. Defendant Weber contends that Ms. Arsan's "directly contradictory affidavit" should be stricken since it "constitutes an attempt to create a sham factual issue." However, the dispositive factual issue before the Court is not who went to the door on May 4 but whether consent was given by anyone for Defendant Weber to enter Plaintiff's home on that date. Because both Plaintiff and Ms. Arsan deny ever giving consent to Defendant Weber, no "sham factual issue" exists. Moreover, the authorities cited by Defendant Weber for this argument concern a plaintiff who attempts to create a factual issue by filing a post-deposition affidavit that contradicts earlier sworn deposition testimony. Here, there is merely a difference in testimony between a plaintiff and a witness as to which one answered the door on May 4, 2015.

In *Andrews v. Hickman Cnty.*, 700 F.3d 845, 859-60 (6th Cir. 2012), the Sixth Circuit held that "[A] social worker, like other state officers, is governed by the Fourth Amendment's warrant requirement. This would simply mean that social workers would have to obtain consent, have sufficient grounds to believe that exigent circumstances exist, or qualify under another recognized exception to the warrant requirement before engaging in warrantless entries and searches of homes." *See also, Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 695 (6th Cir. 2013).

8

Based on the evidence before the Court, Defendant Weber had no warrant to enter and search Plaintiff's home on either April 29 or May 4, 2015, and the evidence is in dispute as to whether Defendant Weber had consent to enter Plaintiff's home on these two dates. The consent to search must be "voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *United States v. Canipe*, 569 F.3d 380, 385 (6th Cir. 1999) (citing *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999). Based on the affidavits of Defendant Weber and Plaintiff, as well as Plaintiff's deposition testimony, there is a genuine issue of material fact as to whether consent was ever given to Defendant Weber on either April 29 or May 4, 2015.

Given the lack of a warrant and the factual dispute as to the existence of consent, Defendant Weber must establish that Plaintiff's Fourth Amendment rights were not violated due to certain "exigent circumstances" that existed on April 29 and May 4, 2015. *Id.*

"Exigent circumstances arise when an emergency situation demands immediate police action that excuses the need for a warrant," including "the need to assist persons who are seriously injured or threatened with such injury." *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir.2010) (internal quotation marks omitted). "Preventing imminent or ongoing physical abuse within a home qualifies as an exigent circumstance." *Schreiber v. Moe*, 596 F.3d 323, 330 (6th Cir.2010). "[T]he cases finding exigent circumstances uniformly cite the need for prompt action by government personnel and conclude that delay to secure a

warrant would be unacceptable under the circumstances." *United States v. Rohrig*, 98 F.3d 1506, 1517 (6th Cir.1996).

Based on the affidavit of Defendant Weber, there is no evidence before the Court to suggest that the situation on either April 29 or May 4, 2015, was an "emergency situation," that there was a need to prevent "imminent or ongoing physical abuse" in Plaintiff's home, or that any delay to secure a warrant would be unacceptable.[2] While Defendant Weber's affidavit references "serious concern" for the safety and welfare of Plaintiff's children due to the allegations that Plaintiff was using drugs in her home with a child present and that the "children were not safe," such statements do not establish "exigent circumstances." Because the alleged Fourth Amendment violation occurred in the context of a personal residence, the need for specific "exigent circumstances" is of even greater importance since the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States Dist. Ct.*, 4007 U.S. 551,559 (2004).

---

[2] Defendant asserts that Plaintiff's "drug use, her erratic and paranoid behavior, and the ultimate finding that she had used methamphetamines and amphetamines indicate that Defendant Weber had a very serious concern about the safety and welfare of Plaintiff's children." However, other than alleged drug use, all of the remaining concerns of Defendant Weber were allegedly discovered after the warrantless and, according to Plaintiff, non-consensual entry and search of Plaintiff's home. What is critical is what Defendant Weber knew at the time she entered Plaintiff's residence on April 29 and May 4, 2015. *Post hoc* justifications cannot support what was otherwise an unconstitutional entry and search. *Myers v Potter*, 422 F.3d 347 (6th Cir. 2005)

10

The next question to address for qualified immunity is whether the Fourth Amendment right was "clearly established at the time of the challenged conduct." *Andrews*, 700 F.3d at 853 (citing *Hughes v. City of North Olmstead*, 93 F.3d 238, 241(6th Cir. 1996)). Stated another way, could Defendant Weber have believed in 2015 that the Fourth Amendment did not apply to investigations conducted by social workers. "When determining whether a constitutional right is clearly established, we look first to decisions of the Supreme Court, then to our own decisions and those of other courts within the circuit, and then to decisions of other Courts of Appeal." *Andrews*, 700 F.3d at 853. As stated earlier, *Andrews*, decided in 2012, held that social workers, such as Defendant Weber, are state actors governed by the Fourth Amendment warrant requirements. As such, the Fourth Amendment right was clearly established when Defendant Weber entered Plaintiff's home in 2015.

Because the law was clearly established in April and May of 2015 that the Fourth Amendment applied to Defendant Weber and because there exists a genuine issue of material fact as to whether consent was given on April 29, 2015, and May 4, 2015 (i.e., whether a constitutional violation occurred), Defendant Weber's motion for summary judgment based on qualified immunity must be denied.

Summary judgment has been denied on the affirmative defense of qualified immunity and the matter will proceed to trial on Plaintiff's Fourth Amendment claim. The Court, however, has questions on the particulars of Plaintiff's claim for

damages. A plaintiff who alleges the violation of a constitutional right in a § 1983 action is not entitled to compensatory damages unless actual injury caused by the violation is proven. *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015), citing *Carey v. Piphus*, 435 U.S. 247, 264, (1978). Moreover, "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages." *Memphis Cnty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986); see, also *Parrish v. Johnson*, 800 F.2d 600, 607 (6th Cir.1986). Nevertheless, as the *Stachura* court made clear, "[w]hen a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate." *Stachura*, 477 U.S. at 310–11.

Although not addressed by the parties, Plaintiff's alleged damages of $32,500 consist of remodeling expenses for a house that she did not own, lost wages and legal expenses to litigate the Greene County Juvenile Court custody dispute. Plaintiff has specifically stated that the lost wages are not attributable to Defendant Weber, and at this stage, it is difficult to see any legal connection between Weber's alleged actions and remodeling expenses for a residence that Plaintiff did not own or a legal determination made by the juvenile court. In Ohio, it is "the juvenile court that decides whether to grant permanent custody to [the county's department of children and family services] or to grant legal custody to a relative." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716,729 (6th Cir. 2011) (citing Ohio Rev. Code §2151.353(A)(3),2151.414(A)(1)). If a

12

parent disagrees with a case plan of a social worker, their remedy is with the juvenile court. Ohio Rev. Code §2151.412(D).[3]

Based on Plaintiff's deposition testimony, as well as the above cited legal authority, compensatory damages may not be recoverable in this case leaving Plaintiff with, at most, nominal damages. Although a plaintiff who recovers damages in any amount, whether compensatory or nominal, qualifies as a "prevailing party" under 42 U.S.C § 1988 and can be awarded attorney fees, the Court will always consider the extent of Plaintiff's recovery in determining a reasonable attorney fee award. *Farrar v. Hobby,* 506 U.S. 103 (1992). "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, see *Carey*, supra, at 256–257, the only reasonable fee is usually no fee at all. *Id.* at 115; *Glowacki v. Howell Public School Dist.*, 566 F. App'x 451 (6th Cir. 2014)

### IV. Conclusion

For the reasons set forth above, Defendant Kristi Weber's Motion for Summary Judgment, Doc. #76, is OVERRULED.

---

[3] Additionally, Weber is entitled to absolute quasi-prosecutorial immunity from liability under § 1983 arising from any allegedly erroneous statements or affidavits or conduct intimately associated with the juvenile court proceeding even if the misrepresentations were intentional or stemmed from inadequate investigation. *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716 (6th Cir. 2011).

13

Date: August 9, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE