IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NANCY ARSAN,                    :

       Plaintiff,

                              Case No. 3:17-cv-121
       v.                    :
                              JUDGE WALTER H. RICE
BETH KELLER, et al.,

       Defendants.        :

---

DECISION AND ENTRY ADOPTING UNITED STATES MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #68);
OVERRULING PLAINTIFF'S OBJECTIONS (DOC. #69); SUSTAINING
IN PART AND OVERRULING IN PART COUNTY DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. #47);
SUSTAINING DEFENDANT JENNIFER MCDERMOTT'S MOTION
FOR JUDGMENT ON THE PLEADINGS (DOC. #57).

---

This matter is currently before the Court on Magistrate Judge Sharon L.

Ovington's Report and Recommendations, Doc. #68, and Plaintiff's Objections to

that judicial filing, Doc. #69. Defendant Jennifer McDermott has filed a Response

to Plaintiff's Objections, Doc. #70, and Defendants Beth Keller, Kristi Weber,

Christina Knowles, Amy Weinman, Amy Amburn, Lana Penney, Joshua Coomer,

Chad King, Greene County Department of Job & Family Services, Children's

Services Division ("Children's Services"), Greene County, Ohio, Board of

Commissioners and Greene County ("County Defendants") have filed a Response

in Opposition to Plaintiff's Objections, Doc. #71. The Court has also reviewed and

considered the Reply to Defendant Jennifer McDermott's Response, Doc. #72.
Magistrate Judge Ovington recommended that the Motion for Judgment on the
Pleadings filed by the County Defendants, Doc #47, be granted, in part, as to
Plaintiff's first cause of action against Defendants Keller, Weinman, Auburn,
Penney, Coomer, and King; and as to Plaintiff's second, third, fourth, fifth, sixth,
and seventh causes of action; that County Defendants' Motion for Judgment on
the Pleadings, Doc #47, be denied, in part, as to Plaintiff's first cause of action
against Defendant Weber; and that Defendant Jennifer McDermott's Motion for
Judgment on the Pleadings, Doc #57, be granted. Based upon the above-
mentioned pleadings and for the reasons set forth below, the Court adopts the
Report and Recommendations of Magistrate Judge Sharon L. Ovington, Doc. #68,
in their entirety.

## I. Background and Procedural History

This case concerns Plaintiff Nancy Arsan's loss of the custody of her two
children, Karson and Kaden. According to Plaintiff, information unconstitutionally
obtained by Children's Services was used in the Greene County Juvenile Court to
deprive Plaintiff of the custody of her sons and to award custody to the fathers of
Kaden and Karson instead. Plaintiff, who is of Syrian descent, a Maronite
Christian and works as an English interpreter, claims that Defendants, largely the
employees and supervisors of Children's Services, violated her Fourth
Amendment right against unreasonable search and seizure, Fifth Amendment

right against self-incrimination, and Fourteenth Amendment rights of equal

protection under the law and due process of law. Plaintiff has also alleged a claim

of conspiracy by Defendants to deprive her of her constitutional rights. Finally,

Plaintiff claims that Defendants Children's Services, Greene County, Ohio, and the

Greene County Board of Commissioners failed to train and properly supervise

their employees and that Defendants Keller, Weinman, Amburn, Penney, Coomer

and King should not be granted qualified immunity.

The Complaint alleges that on April 29, 2015, Defendant Weber, a

caseworker for Defendant Children's Services, without a warrant or consent and

without identifying herself, pushed her way into Plaintiff's residence and told

Plaintiff that there was a report she was abusing drugs and neglecting her

children. Defendant Weber allegedly looked through text messages on Plaintiff's

cell phone and later searched through rooms and opened a closet. At one point,

Defendant Weber told Plaintiff that she could not understand her due to her

accent. After twice telephoning Defendant McDermott, a former employee of

Children's Services and the aunt of Kaden, Defendant Weber told Plaintiff that she

needed to admit to something or Karson, who was with Plaintiff at her residence,

would be removed on an emergency basis. Plaintiff was then allegedly told by

Defendant Weber that she (Weber) would not leave unless Plaintiff submitted to a

drug test. Under duress, Plaintiff's mouth was swabbed. During this time, Plaintiff

admitted to having previously smoked marijuana and taken Adderall for ADHD.

Plaintiff alleged that she agreed to a safety plan for Karson and consented to her

friend, Brittany Hunter, as supervisor, only because Plaintiff was threatened with removal of her son. At the time of this meeting, Kaden was with Defendant McDermott. Plaintiff was told to report the next day to Children's Services.

The following day at Children's Services, Defendant Keller told Plaintiff that she was acting too emotional and that people in this country would find her crazy for acting that way. Plaintiff's request for a neutral caseworker was denied and Defendant McDermott, with no background check or drug test, was named supervisor of the safety plan for Karson. Thereafter, Plaintiff's mother arrived from Lebanon and became supervisor of the safety plan for Karson. However, based on a tip that the plan had been violated, Defendant Weber later returned to Plaintiff's premises accompanied by a police officer and Plaintiff's mother was removed as supervisor. According to the Complaint, Plaintiff agreed, again under duress, that Defendant McDermott could be the supervisor although later Karson's father and Kaden's father became supervisors of the safety plan for their respective sons.

Because Plaintiff was told by Defendant Weber that her drug test was positive for high levels of methamphetamines and amphetamines, she went to Children's Services to obtain a copy of the test. At that time, Plaintiff overheard a comment made to Defendant Weber "that the foreign lady was still in the waiting room." Plaintiff was not given a copy of the test until a few months later.

The Greene County Juvenile Court held a hearing on May 22, 2015, which was attended by Plaintiff and her counsel. At the hearing, Defendant Weber testified that she had received a report that Plaintiff was using methamphetamine,

physically abusing her children and had been seen smoking crack cocaine. Defendant Weber testified that she informed Plaintiff of these allegations when she first visited Plaintiff's home. Defendant Weber testified at the custody hearing that she had not received the results of Plaintiff's second drug test. Allegedly, the second test was negative and had been with Children's Services prior to the hearing; however, this second test was given to the wrong person. Following the May 22nd hearing, temporary custody of Karson was awarded to his father and because he did not live in Greene County, the involvement of Children's Services as to Karson was terminated. A finding was later approved by Defendant Weinman of Children's Services that physical abuse and neglect of the two children were substantiated and custody of Kaden was given to his father.

Children's Services gave Plaintiff a series of steps to complete in order to be re-united with her children, one of which included a psychological evaluation plus two years of group and individual therapy. According to the Complaint, Plaintiff's psychologist and psychiatrist, whom she had been seeing for some four years, advised that there was no basis for further therapy. Defendant Weber, however, allegedly called Plaintiff's therapist and suggested that the diagnosis was incorrect and should be changed. Plaintiff has also alleged that the work of Defendant Weber was reviewed and ratified by supervisors, Defendants Amburn, Penney, Coomer and King, and that Defendants Weber, McDermott and Keller had personal relationships and were Facebook friends.

County Defendants filed a Motion for Judgment on the Pleadings, Doc. #47, Plaintiff filed a Response, Doc. #49, and County Defendants filed a Reply, Doc. #53. Defendant McDermott filed a Motion for Judgment on the Pleadings, Doc. #57, and Plaintiff filed her Response, Doc. #58.

## II. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendations to which an objection is made. The Court may accept, reject, or modify, in whole or in part, the magistrate judge's findings, may receive further evidence, or recommit the matter to the magistrate judge with instructions. *Id. See also* Fed. R. Civ. P. 72 (b)(3).

In this case, Plaintiff has objected to all recommendations of Magistrate Judge Ovington with the exception of the recommendation that Defendant Children's Services (identified improperly by Plaintiff as "Greene County Children's Services Board") be dismissed due to it not being *sui juris,* given that it is under the supervision and control of Defendant Greene County Board of Commissioners. Because Defendant Children Services is a branch of the Greene County government and under the direction and control of Defendant Greene County Board of Commissioners, Defendant Children Services is dismissed. Because Plaintiff has objected to all other recommendations of the Magistrate

Judge, the Court will review these objections *de novo* and in accordance with Fed. R. Civ. P. 72.

Motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) are analyzed under the same standard as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Id.* (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A "legal conclusion couched as a factual allegation" need not be

accepted as true, nor are recitations of the elements of a cause of action sufficient. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account," *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)), without converting the motion into one for summary judgment.

The Court will review the Objections of Plaintiff in the order in which Plaintiff's claims are addressed in the Report and Recommendations, Doc. #68.


### III. Legal Analysis

#### A. Fifth Amendment Right Against Self-Incrimination (Second Cause of Action)

Plaintiff's Second Cause of Action, "Deprivation of Constitutional Rights - Self-Incrimination," fails as a matter of law. Plaintiff claims that Fifth Amendment protections against self-incrimination are available in more than solely criminal proceedings. Doc. #69, PageID##403-05. Magistrate Judge Ovington, however, correctly notes that while an individual may assert the privilege in any proceeding, the question of "whether an individual has suffered the requisite constitutional injury for purposes of a § 1983 action" where the compelled

8

statement is not used in a criminal case, must be answered first. *McKinley v. City of Mansfield*, 404 F. 3d 418, 430 (6th Cir. 2005). The Sixth Circuit has now made it ". . . clear that 'mere coercion does not violate the . . . Self-Incrimination Clause absent use of the compelled statements in a criminal case.' It is only once compelled incriminating statements are used in a criminal proceeding. . . that an accused has suffered the requisite constitutional injury for purposes of a § 1983 action." *Id.* (quoting *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (plurality opinion) citing *Lingler v. Fechko*, 213 F.3d 237, 238-40 (6th Cir. 2002)). Although the Complaint alleges that Plaintiff made incriminating statements about illegal drug use during the April 29, 2015, unannounced visit by Defendant Weber, Plaintiff at no time alleges that she was ever "compelled to be a witness against herself in a criminal case" or "prosecuted for a crime." Doc. #68, PageID#378. Because there are no allegations that criminal proceedings are involved, the Second Cause of Action based on Plaintiff's Fifth Amendment self-incrimination right fails as a matter of law.

### B. Due Process of Law (Third Cause of Action)

Plaintiff's Third Cause of Action, "Deprivation of Constitutional Rights Due Process of Law," will be reviewed for both procedural and substantive due process violations. A review of the allegations of the Complaint along with the relevant case law, however, establishes that no violation of either clause exists.

#### 1. Substantive Due Process

Substantive due process claims generally arise under one of "two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the

conscience." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 861 (6th Cir. 2012)

(quoting *Valot v. S.E. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220,1228 (6th Cir.

1997)).  Plaintiff argues that her substantive due process rights were violated due to the

illegal entry into her home, the coercion to obtain a confession of guilt to a crime and the

ethnic discrimination that occurred. Doc. #69, PageID#406. As noted by Magistrate

Judge Ovington, however, "[s]ubstantive- due-process challenges usually do not survive

if a provision of the Constitution directly addresses the allegedly illegal conduct at

issue." *Smith v. Jefferson Cty. Bd.,* 641 F.3d 197, 217 (6th Cir. 2011) (citing

*Montgomery v. Carter Cty.*, 226 F.3d 758, 769 (6th Cir. 2000).  In this case, there are

specific constitutional provisions, namely the Fourth, Fifth and Fourteenth Amendment

Equal Protection clause, that directly address the allegedly illegal actions of Defendants.

Accordingly, there is no substantive due process violation.

> Because of the highly destructive potential of overextending substantive due process protection, *see, e.g., Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (explaining the dangers), and because the doctrine's borders are so undefined, the Supreme Court has repeatedly cautioned that the concept of substantive due process has no place when a provision of the Constitution directly addresses the type of illegal governmental conduct alleged by the plaintiff.

*Carter Cty.*, 226 F.3d at 769.

At the heart of Plaintiff's substantive due process claim, and in fact the entire

case, is the alleged violation of Plaintiff's rights as a parent and the removal of her

children from her home. While there clearly exists a "constitutional right to the

maintenance of a parent-child relationship," *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th

Cir. 2006), this constitutional right is not without limitations. The right to family integrity is

". . .limited by an equaling compelling governmental interest in the protection of children, particularly where the children need to be protected from their own parents." *Id.* at 690 (citing *Myers v. Morris*, 810 F.2d 1437,1462 (8th Cir.1987)). Of equal importance in the substantive due process analysis herein is the fact that it is not Defendants who determine issues of child removal. Instead, as explained by Magistrate Judge Ovington, it is the juvenile court that has the "ultimate decision-making power" with respect to the legal custody and placement of children. Ohio Rev. Code § 2151.353(A)(3); *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 729 (6th Cir. 2011). Under Ohio law, the sole authority to conduct hearings, consider evidence and make the ultimate determination as to what placement is in the best interest of the child, rests with the juvenile court. Ohio Rev. Code § 2151.412(D). The parent, either individually or through her attorney, has an opportunity to be heard and to challenge the evidence from the caseworkers that is presented at these juvenile court custody hearings. In this instance, Plaintiff, along with her counsel, was afforded that opportunity.

Plaintiff's last objection to the Report and Recommendations as it pertains to substantive due process is that the Magistrate Judge failed to consider elements of the second category of substantive due process, i.e., actions that "shock the conscience." Doc. #69, PageID#408. Conduct shocks the conscience if it "violates the 'decencies of civilized conduct.'" *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846, (quoting *Rochin v. California,* 342 U.S. 165, 172–73,183 (1952)). Such conduct includes actions "so 'brutal' and 'offensive' that [they do] not comport with traditional ideas of fair play and decency." *Id.* at 847, (quoting *Breithaupt v. Abram,* 352 U.S. 432, 435 (1957)). In short, in order to "shock the conscience" and rise to the level of a substantive due process violation, the

behavior must be "egregious." *See id.* at 847–48, as cited in *Range v. Douglas*, 763 F.3d 573, 589–90 (6th Cir. 2014).

The allegations that Plaintiff was subjected to an unlawful search, coerced to take a drug test and incriminated herself by admitting to having smoked marijuana as well as being the subject of discriminatory remarks relating to her "accent," her emotional state as compared to "people in this country" or described as a "foreign lady," without more, simply do not "shock the conscience." While reprehensible (if true), and even though social workers are considered state actors for purposes of § 1983 actions, *Andrews v. Hickman Cnty*, 700 F. 3d 845 (6th Cir.2012), Plaintiff has not pled facts sufficient to "demonstrate that the state acted with the requisite culpability" by engaging in conduct "'so egregious' that is can be said to be 'arbitrary in the constitutional sense.'" *Bowers v. City of Flint*, 325 F.3d 758, 767 (6th Cir. 2003) (citing *Ewolski v. City of Brunswick*, 287 F. 3d 492, 510 (6th Cir. 2002) (holding wife and child's substantive due process rights not violated by police during two-day standoff with deranged husband even though police unnecessarily escalated confrontation provoking husband resulting in suicide murder)). Based on the foregoing, the Court finds no substantive due process violation has been alleged in the Complaint.

### 2. Procedural Due Process

Procedural due process is rooted in ". . .the fundamental requirement that an individual be given the opportunity to be heard in a meaningful way." *Loudermill v. Cleveland Bd. of Ed.* 721 F.2d 550, 563 (1983), (as cited in *Howard v. Grinage,* 82 F.3d 1343, 1349 (6th Cir.1996)). "To establish a procedural due process claim, a plaintiff

must show that (1) [she] had a life, liberty, or property interest protected by the Due Process Clause; (2) [she] was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights." *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).

There is no dispute between the parties as to the first or second elements. Plaintiff maintains, however, that she was deprived of a meaningful hearing concerning the custody of her children due to the tainted investigation conducted by County Defendants, with assistance from Defendant McDermott, and the suspect evidence that was produced. Thus, Plaintiff argues that her claims go to the administrative process surrounding Defendants' investigation and determinations. However, as explained earlier, child "placement determinations are the province of the juvenile court" and not of caseworkers or social workers. *Pittman*, 640 F.3d at 730. A social worker is entitled to absolute quasi-prosecutorial immunity from liability in § 1983 actions regarding statements submitted in a juvenile court child custody proceeding. *Id.* 724-725. Further, a social worker is not responsible for the legal deficiencies in custody proceedings before the juvenile court and, as such, cannot violate a parent's procedural due process right in custody matters. *Id.* Plaintiff was represented by counsel at a hearing prior to the ultimate determination by the juvenile court that custody would go to the fathers of Kaden and Karson. The fact that a hearing occurred and that Plaintiff was represented by counsel at the hearing demonstrates the procedural fairness of the proceedings. *Id.* (*citing Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981)). Plaintiff's Complaint, even if her allegations are true, and drawing every conclusion in light of the applicable standard, has failed to plead a procedural due process claim.

## C. Equal Protection (Fourth Cause of Action)

Plaintiff's Fourth Cause of Action, "Deprivation of Constitutional Rights - Equal Protection," alleges a violation of the 14th Amendment by discrimination against Plaintiff due to her ethnicity. Plaintiff objects to Magistrate Judge Ovington's recommendation that her equal protection claims must fail as a matter of law. However, "[T]o state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Further, Plaintiff must show that the disparate treatment she experienced was "so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational". *Byers v. City of Cincinnati*, No. 1:13-cv-339, 2013 U.S. Dist. LEXIS 157796 (S.D. Ohio Nov. 4, 2013) (*citing United States v. Green*, 654 F.3d 637, 651-52 (6th Cir. 2011)).

Plaintiff's Complaint fails to allege that she was treated differently from other mothers or individuals who were similarly situated to her. There is no evidence in the Complaint that any Defendant during the juvenile court custody hearing referred to her ethnicity; nor did Plaintiff allege in the Complaint with any factual specificity that the outcome of the juvenile court proceedings was influenced by that ethnicity. Although courts do not require 'exact correlation' when evaluating whether parties are similarly situated, they do require 'relative similarity.'" *Ryan v. City of Detroit*, 174 F. Supp. 3d 964, 976 (E.D. Mich. 2016), 698 F. App'x 272, 280-81 (6th Cir. 2017). Plaintiff's

allegations, that the fathers of her two children, and others, including Defendant McDermott, are to be seen as "similarly situated" persons, fail because Plaintiff does not allege that any of these individuals were being investigated for drug use in the presence of their children and neglect of their children. Additionally, Plaintiff objects that not only were other non-Middle-Eastern, white persons, treated differently than she, but that they also were treated differently than Plaintiff's mother. Plaintiff, however, fails to cite any authority for her argument that she has a right to have a relative from her family as supervisor. Indeed, it should be noted, that Plaintiff's mother was named supervisor of the plan but was later removed after it was found that she was not complying with the rules of the safety plan. Doc. #1, PageID#11. Absent a close relationship with the person who possesses the right, "[o]rdinarily, a party 'must assert his own legal rights' and 'cannot rest his claim to relief on the legal rights . . . of third parties.'" *Sessions v. Morales-Santana*, 137 U.S.1678, 1689, (2017) (citing *Warth v. Seldin*, 422 U.S. 490,499 (1975). (2017)). Based on a review of the allegations of the Complaint, even if true, Plaintiff's equal protection claim must fail.

### D. Conspiracy (Fifth Cause of Action)

Plaintiff's Fifth Cause of Action, "Conspiracy for Deprivation of Constitutional Rights," was analyzed by Magistrate Judge Ovington pursuant to 42 U.S.C. § 1985(3), 42 U.S.C. § 1983, as well as under Ohio law. Plaintiff's claim for conspiracy is broadly alleged and claims that Defendants Weber and McDermott acted in concert to deprive Plaintiff of her Fourth and Fifth Amendment and due process rights with overt acts of

forcible entry and demand for incriminating statements.[1] As stated in the Complaint, all Defendants' actions were allegedly based on false information and designed to coerce Plaintiff into accepting safety plan supervisors and ultimately ending in the removal or change of custody of her children. Doc. #1, PageID#19-20. Plaintiff further alleges that Defendants Weinman, Amburn, Penney, Coomer, and King reviewed the actions of Defendants Weber and Keller, failed to discipline them, and ratified and endorsed their actions and plan. *Id.* at PageID#20.

### 1. 42 U.S.C. § 1985(3)

Plaintiff claims that the facts as alleged in her Complaint are sufficient to show adequate 'ethnic animus'. A claim for conspiracy under § 1985(3) requires a plaintiff to allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Center for Bio-Ethical Reform, Inc.*, 477 F.3d at 832. Additionally, "[t]he Supreme Court requires that § 1985 claims contain allegations of 'class based, invidiously discriminatory animus.'" *Webb v. United States*, 789 F.3d 647, 672 (6th Cir. 2015). Further, "a plaintiff alleging a conspiracy to deprive her of her civil rights must establish that the alleged conspirators shared a common discriminatory animus." *Pahssen v. Merril Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012) (*citing Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). Finally, a "[c]onspiracy claim must be

---

[1] Conspiracy is the only cause of action in the Complaint alleged against Defendant Jennifer McDermott.

pled with some degree of specificity and . . . vague conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Center for Bio-Ethical Reform, Inc.*, 477 F.3d at 832.

Plaintiff's Complaint does not allege a common discriminatory racial or class-based animus as to Defendants Weber and McDermott; nor are there any facts alleging any class-based invidiously discriminatory animus on the part of Defendant McDermott. (As noted by Magistrate Judge Ovington, even if Defendant Weber acted with the requisite discriminatory animus, there are no allegations that Defendant McDermott shared that animus). *Pahssen v. Merrill Cnty.*, 668 F.3d 356, 368 (6th Cir. 2012). Plaintiff alleges Defendants Weber and Keller had phone conversations with Defendant McDermott and that these phone conversations, along with evidence that these two Defendants and Defendant Keller were Facebook friends, sufficiently establish a conspiracy between them. Plaintiff, however, has not demonstrated any specific evidence of the content of these phone conversations or that Defendant McDermott even intentionally participated in any activities with Defendants Keller or Weber. Because Plaintiff has offered no specificity to any alleged conspiracy, common discriminatory animus or a particular plan between Defendants, Plaintiff has not stated a claim of conspiracy under § 1985.

### 2. 42 U.S.C. § 1983

To state a claim for conspiracy under § 1983, a plaintiff must allege: "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 329 (6th Cir. 2013). "Although

circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gavitt v. Born*, 835 F.3d 623, 647 (6th Cir. 2016) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)).

Although Plaintiff bases her argument on the allegations of a conspiracy as pled, a review of the Complaint shows Plaintiff has not pled the elements of a conspiracy. Lacking is a failure to plead any factual allegations of a "single plan", or a "conspiratorial objective." A failure to "plead a plan or agreement to violate [her] constitutional rights is fatal to [her] conspiracy claim" under § 1983." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011).

### 3. State Law Conspiracy Claim

Plaintiff's has asserted in her objections that a claim of civil conspiracy under Ohio law was also properly pled in her Complaint.[2] Ohio civil conspiracy consists of (1) a malicious combination; (2) of two or more persons; (3) which causes injury to person or property; and (4) the existence of an unlawful act independent from the actual conspiracy. *Replogle v. Montgomery Cty.*, No. 3:09-cv-102, 2009 WL 1406686, at *6 (S.D. Ohio May 19, 2009) (Rice, J.). "Conspiracy claims must be pled with some degree of specificity; vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim." *Id.* at *7.

---

[2] Plaintiff points to her jurisdictional statement in which she invokes this Court's supplemental jurisdiction. Doc. #49, PageID#279.

Plaintiff argues that there exists a malicious combination to deprive her of her children by Defendants Weber, Keller, and McDermott, which resulted in a personal injury (the loss of her children), and that the underlying torts of defamation and "misuse of process" are the underlying act(s).[3]

Plaintiff, however, has not pled the elements of the torts of defamation or misuse of process in her Complaint. Specifically, for the tort of defamation, Ohio law requires as an essential element "a false and defamatory statement concerning another." *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008). The Complaint fails to allege any statement made by any Defendant that is both false and defamatory. With respect to abuse of process ". . . a plaintiff must show that (1) a legal proceeding has been commenced in proper form and with probable cause; (2) the proceeding has been perverted to attempt to accomplish an ulterior motive for which it was not designed; and (3) direct damage has resulted from the wrongful use of process." *Gillman v. Schlagetter,* 777 F. Supp. 2d 1084, 1098 (S.D. Ohio 2010) (Rose, J.). As discussed previously, the final decision on the custody of Plaintiff's children was determined by the juvenile court with social workers entitled to absolute quasi-prosecutorial immunity for statements made to the court. Plaintiff fails to present a plausible factual allegation that Defendants had any influence over the 'perversion' of the juvenile court's proceedings. This plausibility is particularly suspect given that a hearing was held in juvenile court and Plaintiff was represented by counsel. Without a properly pled defamation or abuse/misuse of process claim, Plaintiff has stated no conspiracy claim under Ohio law.

---

[3] Plaintiff has used the phrase "misuse of process" in her Complaint which appears to be another name, albeit less commonly used, for the tort of "abuse of process." Restatement (Second) of Torts § 682 cmt. a (Am. Law. Inst. 1977)

### E. Failure to Train and Supervise (Sixth and Seventh Causes of Action)

Because Plaintiff's Sixth and Seventh Causes of Action, Failure to Train and Failure to Supervise, respectively, require an analysis utilizing the same legal standard and authorities, these two final causes of action in the Complaint will be discussed together. Plaintiff's Complaint does not state a claim under either theory.

In order to state a claim against the relevant County Defendants for the failure to train or supervise, Plaintiff is required to demonstrate not only that the deprivation of a constitutional right exists but that the [relevant governmental entity or final decision maker as such] is responsible for that constitutional violation. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "A municipality cannot be held liable . . . on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

For either a claim for failure to train or supervise to survive, the plaintiff must allege: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis*, 455 F.3d at 700. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). "[T]he plaintiff 'must show prior instances of unconstitutional conduct

demonstrating that the County has ignored a history of abuse[s] and was clearly on notice that training . . . was deficient and likely to cause injury." *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citation omitted).

Plaintiff argues that liability exists because the supervisors of the County Defendants reviewed but did not stop the allegedly illegal conduct of Defendants Weber and Keller. Such an allegation, however, is nothing more than a claim based on *respondeat superior* which does not create liability against a municipality for a constitutional violation in § 1983 actions. *Monell*, 436 U.S.658 at 691. Plaintiff also claims that references to prior lawsuits cited in the Complaint were sufficient to establish the required notice for deliberate indifference on behalf of County Defendants. Doc. #1, PageID#21. However, there are no allegations in this Complaint as to who was involved in these lawsuits, what misconduct allegedly occurred and how it is relevant to the allegations in Plaintiff's Complaint in this litigation. Complaints that "concern unrelated allegations of misconduct" do not support a failure to train or supervise claim." *City of Canton v. Harris*, 489 U.S. 370,390-391(1989) (as cited in *Smith v. City of Akron*, 476 F. App'x 67, 70 (6th Cir. 2012)). Plaintiff has alleged no factual allegations in the Complaint to establish claims of failure to train or supervise against the County Defendants.

### F. Qualified Immunity.

The County Defendants argued in their Rule 12 ( c) motion for judgment on the pleadings that all County Defendants should be granted qualified immunity. Plaintiff has opposed qualified immunity for any County Defendant. Doc. #69, PageID#425. While it

is generally inappropriate for a district court to grant qualified immunity on a Rule 12 (b)(6) or Rule 12( c) motion for judgment on the pleadings, *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015), for the reasons stated previously in this Decision and Entry, Plaintiff has not alleged sufficient facts in her Complaint to state a claim based on a violation of her Fifth Amendment right against self-incrimination or her Fourteenth Amendment rights for equal protection and due process. Therefore, absent sufficient facts to allege constitutional violations, no qualified immunity analysis is necessary. Plaintiff's "First Cause of Action: Deprivation of Constitutional Rights Unreasonable Search," however, alleges that Defendant Weber violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and that individual County Defendants Keller, Weinman, Amburn, Penney, Coomer, and King "ratified and endorsed" the actions of Defendant Weber. However, nowhere in the Complaint is there any allegation that those individual County Defendants had any direct involvement in any search at Plaintiff's home. As stated previously, there is no § 1983 liability for *respondeat superior, Monell*, 436 U.S. at 691; nor does a "mere failure to act" permit Plaintiff to argue a claim for supervisor liability in a § 1983 action. For these reasons, this Court adopts the recommendations of Magistrate Judge Ovington that qualified immunity exists for individual County Defendants Keller, Weinman, Amburn, Penney, Coomer, and King.

The Magistrate Judge has also recommended, based upon the allegations of the Complaint, that Plaintiff has adequately asserted a plausible violation of her constitutional right to be free from unreasonable searches, Doc. 68, PageID#397. According to the allegations of the Complaint, Defendant Weber lacked either consent

or warrant when she entered Plaintiff's residence. Additionally, there is no emergency or exigent situation alleged in the Complaint that would justify Defendant Weber's entry. Moreover, Defendant Weber, according to the allegations of the Complaint, refused to leave when asked, and searched, without permission, a portion of Plaintiff's residence. Doc. #1, PageID#16. Defendant Weber later returned, albeit with a police officer, but again without a warrant or consent, and once again entered Plaintiff's home and allegedly conducted an unlawful search. Doc. #1, PageID#16.

As a social worker, Defendant Weber is governed by the Fourth Amendment warrant requirements, *Andrews v. Hickman Cty.*, 700 F.3d 845,859-60 (6th Cir. 2012), and, at the time of the alleged intrusion, April 29, 2015, the right was clearly established in a particularized sense. *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (citing *Brosseau v. Haugen*, 543 U.S. 194,198 (2004) (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

Because it was clearly established, at the time that Defendant Weber entered into Plaintiff's home in April and May of 2015, that social workers were subject to the Fourth Amendment warrant requirement and because the Complaint sufficiently alleges that Defendant Weber violated Plaintiff's Fourth Amendment right against unreasonable searches, County Defendants' Motion for Judgment on the Pleadings, Doc. # 47, will be overruled, in part, as it pertains to Defendant Weber.


## IV. Conclusion

For the reasons set forth above, the Court ADOPTS Magistrate Judge Ovington's Report and Recommendations, Doc. #68, and OVERRULES Plaintiff's Objections to

said judicial filing, Doc. #69; SUSTAINS in part and OVERRULES in part County Defendants' motion for judgment on the pleadings, Doc. #47; and SUSTAINS Defendant Jennifer McDermott's motion for judgment on the pleadings Doc. #57.

Date: August 16, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE